# THE SUPREME COURT

OF THE

# STATE OF ILLINOIS,

OF CASES DETERMINED AT

NOVEMBER TERM, 1862, AT MOUNT VERNON.

————◆————

WILLIAM THOMAS, Trustee of the Bank of Illinois, Appellant, *v.* JOHN B. ADAMS, and WILLIAM C. ADAMS, Administrators, and WILLIAM WYNN, LAURA WYNN, JOHN WYNN, HOMER WYNN, and MONROE WYNN, heirs of Josiah R. Wynn, deceased, and HIRAM JOHNSON, guardian of said heirs, Appellees.

APPEAL FROM CRAWFORD.

A bill in chancery should not be dismissed upon motion for want of proper parties, but the necessary persons should be made parties by amendment. The practice to dismiss a bill is confined to cases where there is a want of equity upon the face of the bill, and it is manifest that no amendment can help it, or where there is a want of jurisdiction.

A court of chancery will entertain jurisdiction of a bill filed by the equitable holder of judgments against the heirs and administrators of a deceased judgment debtor, to compel a discovery of the assets of the intestate, and to subject them to the payment of the judgments.

If it should appear that there are several judgments, each of which was obtained against the intestate jointly with different parties, the co-defendants in all of these judgments should be made parties to the bill.

Thomas, Trustee, etc., *v.* Adams et al.

In those cases where the intestate was a surety, the complainant should be
required to exhaust his remedy against the principals first; but in cases where
the intestate was the principal debtor, and his co-defendants were his sure-
ties, the amount of the judgments should be made out of the estate in the
hands of the heirs which came to them by descent or devise.

THE record in this cause shows the following facts:

The president, directors and company of the Bank of Illi-
nois recovered judgments in the Lawrence Circuit Court,
against Josiah R. Wynn and others, as follows:

At September term, 1843, against Archibald George, Jack-
son B. Shaw, and Josiah Wynn, for $246.75, and costs, on
which execution was issued on the 11th of September,
1843, on which nothing was made. On the 10th of June,
1848, a second execution was issued, on which $208.51 was
made on the 25th of October, 1848.

At September term, 1842, against Josiah R. Wynn, Archi-
bald George, and Griffin Garland, for $132 and costs, on
which execution was issued on the 11th of September, 1843,
and nothing made. On the 10th of July, 1848, second execu-
tion issued, which was levied on several lots of land, and
returned without any sale.

At September term, 1842, against Jacob Jeffs, Josiah R.
Wynn, Griffin Garland, and Samuel V. Allison, for $129.60,
and costs. Execution issued 11th of September, 1843, and
nothing made; second execution issued 13th of February,
1852; levied on real estate; not sold for want of bidders.

At September term, 1846, against Isaac Allison, Enos
Organ, and Josiah R. Wynn, for $75.31, and costs. Execution
issued 5th of February, 1847, on which $35 was paid by Enos
Organ.

On the 10th of April, 1845, the president, directors, and
company of the Bank of Illinois, acting under the provisions
of the "Act supplemental to an act to reduce the public debt
$1,000,000, and put the Bank of Illinois into liquidation,"
(Acts of 1844–45, p. 246,) assigned, transferred and conveyed
to Albert G. Caldwell and E. G. Ryan, as assignees, all the
personal estate, rights and credits, notes, bonds, judgments
and debts of every kind due to said bank at Shawneetown,

and to the branch of said bank at Lawrenceville, to have and to hold, to them and to their survivors, etc. ; the judgments were obtained for money payable at the branch of said bank at Lawrenceville.

That, acting under a decree of the Circuit Court of the United States, for the State and District of Illinois, the assignees of the bank assigned and conveyed to the complainant as trustee, all and singular the real and personal property, and all judgments, mortgages, bonds, notes and bills, on which anything might remain due to said bank or assignees at the places aforesaid.

Subsequent to the date of the judgments aforesaid, the said Josiah R. Wynn departed this life intestate, leaving him surviving, as heirs, William Wynn, Laura Wynn, John Wynn, Homer Wynn, and Monroe Wynn. Letters of administration were granted on his estate by the court having jurisdiction in Crawford county, to John B. Adams and William C. Adams, who have administered the personal estate, and allege that they have no assets with which to pay the judgments aforesaid.

That said Wynn died seized of real estate sufficient to pay the judgments aforesaid, situated in Crawford county, which has passed to the said heirs, subject to the right of their mother to be endowed of one-third thereof for life.

The location and description of said real estate is alleged to be unknown. Hiram Johnson, the guardian for said heirs, has the title papers. The administrators and guardian, it is alleged, although often requested, have refused to pay said judgments.

The complainant, having the equitable title only to the judgments aforesaid, and having no right to sue in a court of law, comes into this court and asks that defendants may be required to furnish a descriptive list of the real estate of the intestate ; and that a decree be entered against the administrators and heirs for the amount due on the judgments aforesaid, payable out of assets in the hands of the administrators, if sufficient there be ; if not, then out of the real estate passed to the heirs, or rents or profits thereof, in the hands of the guardian, etc.

At the May term, 1862, of the court, the infant defendants, by their guardian, entered a motion to dismiss the bill for want of equity, and also filed an answer denying the allegations of the bill—the filing of which answer, by agreement, not to operate as a waiver of the motion to dismiss. And the court, upon consideration of the cause, in connection with the motion aforesaid, decided *pro forma* that complainant was not entitled to a decree, and dismissed the bill with costs.

The parties then agreed, in order to avoid costs of making copies, etc., that the facts stated in the bill were proven by the exhibits filed and referred to, and that the case might be taken to the Supreme Court by appeal.

The errors assigned are—

1. The court erred in deciding that complainant had no right to a decree for the amount due on the judgments of the Lawrence Circuit Court, and in dismissing the bill.

2. The court erred in not rendering a decree in favor of the complainant, according to the prayer of the bill.

W. THOMAS, *pro se.*

First. Appellant being the equitable owner of the judgments, he had a right to sue in chancery to obtain judgment in his own name. *Dixon* v. *Buel,* 21 Ill. 203; 2 Story's Equity, 1037, A.

Second. That by the provisions of an act entitled "An act to prevent fraudulent devices, and for other purposes," approved 28th February, 1833, (Revised Laws, page 315,) and placed under the head of "Frauds and Perjuries," (Revised Statutes of 1845, page 258,) the right of action is given against the administrators and heirs, and the court should have given a decree according to the provisions of that act.

The appellant represents the creditors of the bank, and may come into a court of equity to subject property and choses in action to the payment of debts. 2 Story, 1252; 8 Peters, 281, 286.

See also *Powell* v. *Keith,* 1 Gilm. 494, to prove defendants' liability.

A. KITCHELL, for Appellees.

The complainant seeks to obtain a decree against the administrators and heirs of J. R. Wynn for the amount of four judgments against Wynn and others, on which executions had been issued and may again be issued ; and the only ground of asking the aid of equity is, that the complainant does not know the description of the real estate which has descended to the heirs of Wynn, and because Hiram Johnson, guardian of said heirs of Wynn, who are minors, is supposed to have the title papers of said lands.

The decree dismissing the bill was proper, 1st, for the want of equity ; 2nd, for the want of sufficient proof.

The judgments exhibited, show that in the *first* George and Shaw, in the *second* George and Garland, in the *third* Jeffs, Garland and Allison, and in the *fourth* Allison and Organ, were jointly in the judgments with Wynn, but none of these co-defendants are made parties to complainant's bill.

On all the judgments executions have been issued, and they are all shown to be "unreversed, unsatisfied and in full force," but no cause is alleged why they may not be collected by execution off some one or more of the co-defendants.

On the second judgment execution was issued July 10, 1848, and levied on one hundred and twenty acres of land and three town lots, which, so far as appears from the bill, are still subject to be sold under that levy.

On the third judgment execution was issued February 13, 1852, and levied on sixty-nine acres of land, which, so far as appears from the bill, is still lying under that levy.

It was agreed by the parties, that the exhibits should not be copied into the record, and that they proved the allegations of the bill as to the judgments, but the agreement does not. provide that any others are confessed, and there being no proof of the want of personal assets, or of the refusal of the administrators and guardians to pay, or to disclose the titles, the complainant therefore failed in his proof, and the decree was right.

4

BREESE, J.   The practice, to dismiss a bill in chancery, on motion, has not generally obtained in the courts of Great Britain, or in this country, unless it be for want of equity, apparent on the face of the bill, and where it is manifest no amendment could help it, or for want of jurisdiction.  For a want of proper parties it is not the practice to dismiss on motion.   When there is equity in the bill, and all the neces-sary parties are not before the court nor in the bill, the rule is, to hold the bill, in order that proper parties may be made to it.

The objection here was, that all the judgment debtors were not made parties.   This was a good objection, but the court, instead of dismissing the bill, should have retained it in order that proper amendments might be made, and the proper par-ties brought in.   This objection, made at the hearing, could be obviated, and therefore it was error to dismiss the bill. Story's Eq. Pleading, secs. 75, 76, (b).   The cause will be remanded, with leave so to amend the bill as to make the judgment debtors parties ; and if, on the hearing, by the testi-mony, it should appear that the intestate Wynn was surety merely on the notes on which the judgments were obtained, the complainant should be required to exhaust his remedy against the principals therein, especially, so far as the levy on the land is concerned.   If, however, it should appear that Wynn was the principal debtor, and the owners of the land on which the levy was made were sureties, then the complainant's demand should be made out of the estate of Wynn, in the hands of his heirs, which came to them by descent or devise, and they should be required to discover its extent and descrip-tion.   This would be equity, and this the court should do, and the bill seeks this discovery.

When the judgment debtors are before the court, they may, on taking an account, show enough to discharge the heirs of Wynn, by charging themselves.   At any rate they are inter-ested in stating the account, and are necessary parties.   There is no doubt about the right of complainant to bring this suit in chancery, for the relief he seeks.   *Chadsey's Adm'rs* v. *Lewis,* 1 Gilm. 137 ; *Fry* v. *Bank of Illinois,* 5 id. 336; *Leach* v. *Thomas,* 27 Ill. 457.

The decree is reversed, and the cause remanded, with leave to the complainant to amend his bill.

*Decree reversed.*